**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

KATHRINA LYNCH,

                **Plaintiff,**

-vs-                                    **Case No.  6:05-cv-843-Orl-JGG**

COMMISSIONER OF SOCIAL
SECURITY,

                **Defendant.**

_____

## MEMORANDUM OF DECISION

        Plaintiff Kathrina Lynch ["Lynch"] appeals to the district court from a final decision of the

Commissioner of Social Security [the "Commissioner"] denying her application for disability

insurance benefits and supplemental security income. *See* Docket No. 1 (complaint).  For the reasons

set forth below, the Commissioner's decision is **AFFIRMED**.

I.      **PROCEDURAL HISTORY**

        On January 22, 2003, Lynch filed a claim for disability insurance and supplemental security

income benefits.  R. 51, 228.  Lynch claims disability as of October 7, 2002 due to orthopedic pain

and limitations in her back, neck, and shoulder.  R. 81.  Her application was denied initially, and upon

reconsideration.   R. 36, 40. 231, 234.   On July 1, 2004, the Honorable Albert D. Tutera,

Administrative Law Judge ["ALJ"], held a fifteen-minute hearing on Lynch's claim in Orlando,

Florida.  R. 245- 60.  Non-attorney Robert L. Hicks represented Lynch at the hearing.  R. 245.  The

ALJ heard testimony from Lynch.  R. 246.

On September 8, 2004, the ALJ issued a decision that Lynch was not disabled and not entitled to benefits.  R. 14-20.  Following a review of the medical and other record evidence, the ALJ found that Lynch could not perform her past relevant work as a machine operator, driver, and cashier.  R. 15, 19, Finding 7.  The ALJ found that Lynch nevertheless retained the residual functional capacity ["RFC"] to perform substantially all of the physical exertional requirements of sedentary work, including the abilities to lift and carry up to ten pounds occasionally; walk and stand approximately two hours in an eight hour workday; sit for approximately six hours per day; and climb, balance, stoop, kneel, crouch, or crawl occasionally.  R. 19, Finding 6.  Applying the Medical-Vocational Guidelines, the ALJ concluded that Lynch was not disabled.[1]  R. 20, Finding 12.

The Appeals Council denied review on March 31, 2005.  R. 4-6.  On June 6, 2005, Lynch timely appealed the Appeals Council's decision to the United States District Court.  Docket No. 1 at 1, ¶ 3.  On January 18, 2006, Lynch filed in this Court a memorandum of law in support of her appeal.  Docket No. 17.  On March 20, 2006, the Commissioner filed a memorandum in support of her decision that Lynch was not disabled.  Docket No. 18.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Lynch assigns two errors to the Commissioner.  First, Lynch claims that the Commissioner erred by failing to meet her burden of proving that Lynch could perform other work in the national economy.  Docket No. 17 at 4-5.  Lynch argues that the ALJ erred by relying exclusively on the

---

[1]The Social Security ALJs face a herculean task.  The Commissioner now expects ALJs to hear and decide 50 to 55 decisions per month according to a former Chief ALJ in a July 2005 presentation at a Federal Judicial Center workshop on disability appeals.  With only the help of non-attorney decision-writers and staff attorneys, the ALJs must rapidly process a monumental backlog of thousands of complex, aging cases.  The effects are felt in the district court.  According to the AOUSC, the Middle District of Florida has the third highest volume of disability appeals in the nation.  Each magistrate judge in the Orlando Division, for example, resolves approximately fifty-three appeals every year — an average of about one per week.

Medical-Vocational Guidelines in light of her severe non-exertional impairments, and her inability to perform the full range of sedentary work.  *Id.* at 5-7.  Second, Lynch claims that the Commissioner erred by improperly evaluating Lynch's complaints of pain.  *Id.* at 7-10.

The Commissioner argues that substantial evidence supports her decision to deny disability. First, the Commissioner argues that the ALJ did not err by exclusively using the grids because Lynch is able to perform the full range of sedentary work, and did not have any significant non-exertional impairments.  Docket No. 18-1 at 5-6.  Second, the Commissioner argues that Lynch failed to provide sufficient evidence to support her subjective complaints of disabling pain.  *Id.* at 9-10.

## III.    THE STANDARD OF REVIEW

### A.    AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.

1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.   REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four

of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*

*v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the

district court must either find that the Commissioner's decision is not supported by substantial

evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.

*Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record

of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.

1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for

district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-

four remand may be appropriate to allow the Commissioner to explain the basis for his decision.

*Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ

to explain his basis for determining that claimant's depression did not significantly affect her ability

to work) (treating psychologist acknowledged that claimant had improved in response to treatment and

could work in a supportive, non-competitive, tailor-made work environment).  On remand under

sentence four, the ALJ should review the case on a complete record, including any new material

evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to

consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1

(11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a

sentence-four remand, the district court enters a final and appealable judgment immediately, and then

loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the
> Commissioner of Social Security, but only upon a showing that there is new evidence
> which is material and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new,

non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is

a reasonable possibility that it would change the administrative result; and 3.) there is good cause for

failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92;  *Cannon*

*v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir.

1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health and*

*Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner

if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.  With a

sentence-six remand, the parties must return to the district court after remand to file modified findings

of fact.  *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does

not enter a final judgment until after the completion of remand proceedings.[2]  *Id.*

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Commissioner*, __ F. 3d __, 2006 WL 1843633 n.11 (11th Cir. July 6, 2006).

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

### A.   DEVELOPING THE RECORD

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

### B.   THE FIVE STEP EVALUATION

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985

-8-

F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"].  This assessment measures whether a claimant can perform past relevant work despite his or her impairment.  20 C.F.C. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.C. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant.  *See* SSR 82-61.  If so, the claimant is not disabled.  If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy.  SSR  82-61.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.C. § 404.1567.

The claimant must prove disability on or before the last day of his or  her insured status for the purposes of disability benefits.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c).  If a claimant becomes disabled after losing insured status, the claim for disability benefits must be denied despite

the claimant's disability. *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

### C.     OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations

are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### D.     TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the

accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or

the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527(e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

### E.    PAIN

Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1529. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

-13-

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

## F.    CREDIBILITY

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

### G.    MEDICAL TESTS AND EXAMINATIONS

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

### V.    APPLICATION AND ANALYSIS

#### A.    THE FACTS

Lynch was born on September 15, 1955, and was forty eight years old on the date of the ALJ's hearing.  R. 248.  Lynch completed tenth grade, and has past relevant work experience as a machine operator for a factory, a cashier for a fast food restaurant, and a driver for an automobile auction.  R. 102.  Lynch claims disability as of October 7, 2002 due to a variety of impairments related to pain in her back, neck, and shoulders from degenerative joint and disc disease.  R. 51, 81, 228.

On December 4, 2001, Lynch was working as a machine operator when a part of the machine fell on her.  R. 150.  Lynch went to Health Central Hospital's emergency room, where x-rays revealed no fractures.  *Id.*  On December 6, 2001, Lynch went to Health Central Express Care center ["Health Central"] with complaints of neck and back pain.  R. 142.  Dr. Kelly Bowman's impression was a

concussion and cervical and thoracic strain.  *Id.*  Dr. Bowman recommended that Lynch's employer place her on "modified duty" until December 13, 2001.  R. 143.  The doctor noted that Lynch should not climb, bend, or stoop; not lift, push, or pull over two pounds; limit standing, walking, and use of her right arm; and avoid hazardous moving equipment.  *Id.*  Lynch returned to Health Central on December 11, 2001 with similar complaints of neck and back pain.  R. 136.  Dr. Bowman recommended that Lynch stop working until she saw an orthopedic doctor.  R. 137.

The record includes a number of notes from Dr. Emmanuel D. Scarlatos excusing Lynch from work temporarily, or recommending work limitations.  R. 154-57.  In the first note dated December 18, 2001, Dr. Scarlatos stated that Lynch would be "disabled" until approximately January 3, 2001.  R. 157.  In the next note dated January 16, 2002, the doctor stated that Lynch would be disabled until approximately January 29, 2002.  *Id.*  On January 29, 2002, Dr. Scarlatos recommended work restrictions.  R. 156.  Lynch could do limited overhead work and lift only up to twenty-five pounds for one week.  *Id.*  On February 5, 2002, Dr. Scarlatos recommended that Lynch resume her regular duties.  R. 155.  On February 26, 2002, Dr. Scarlatos again recommended that Lynch continue working her regular duties with back support.  R. 154.

On April 2, 2002, Dr. Richard Smith evaluated Lynch for lower back pain.  R. 150.  Lynch was still working.  *Id.*  Lynch complained of constant pain with radiation to both legs, as well as numbness and tingling.  *Id.*  Lynch described the pain as "ten out of ten."  *Id.*  Dr. Smith observed that Lynch ambulated with an antalgic gait, and noted tenderness on palpation of her paraspinal muscles midline.  R. 152.  Dr. Smith also noted a sciatic notch area tenderness, as well as mild spasms on palpation.  *Id.*  Her straight leg test was negative.  *Id.*  Dr. Smith diagnosed lumbago (low back pain) and sciatica, and

explained to Lynch that he did not know the cause of her cervical and lumbar pain. *Id.* He recommended an MRI to rule out a herniated disc. *Id.* The doctor recommended certain work restrictions. R. 153. Lynch could not lift more than twenty-five pounds, and could not bend repetitively or stand for a long period of time. *Id.*

An MRI of the cervical spine dated August 6, 2002 revealed a central disk protrusion at C3-C4, large central disk herniations at C4-C5 and C5-C6, and a small central protrusion at C6-C7. R. 148. The MRI of the lumbar spine revealed mild disc bulge associated with desiccation at L4-L5 and L5-S1, and a disk protrusion into the left neural foramen causing mild left foraminal stenosis at L2-L3. R. 149. Lynch alleges disability as of October 7, 2002.

On April 8, 2003, Dr. Sam Ranganathan performed a consultative evaluation for the Office of Disability Determinations. R. 158-60. Lynch's chief complaints were constant neck and low back pain. R. 158. Lynch also complained that her pain radiated to her right shoulder. *Id.* Dr. Ranganathan performed a physical evaluation., He stated that Lynch "would not make a good effort for motor system strength." R. 159. The doctor further observed that Lynch was able to walk without assistive devices, and was able to tandem walk and heel and to walk, although she complained of pain while performing the tests. *Id.* Dr. Ranganathan also observed Lynch get on and off the examination table, and noted that she was able to take off her shoes and jeans. *Id.* He further noted that Lynch was able to sit comfortably on the examination table for at least fifteen minutes and in the waiting room chair for more than twenty minutes. *Id.* X-rays of Lynch's right shoulder revealed mild arthritic changes of the AC joint. *Id.* Lynch did not have any shoulder tenderness. *Id.* Dr. Ranganathan also

completed a Range of Motion Report Form.  R. 161.  He noted that her shoulder and cervical and lumbar spine range of motion were all in normal range.  *Id.*

Dr. Ranganathan diagnosed 1.) degenerative joint disease of the cervical spine and lumbar spine (as well as disc disease noted in her August 2002 MRI results); 2.) cervical and lumbar spin pain; 3.) obesity; and 4.) hypertension., R. 160.  Dr. Ranganathan also opined as to Lynch's physical RFC.  According to the doctor, Lynch is able to lift and carry twenty pounds occasionally and frequently, and stand, walk or sit for approximately six hours per day.  *Id.*  Dr. Ranganathan further opined that Lynch had no manipulative limitations, but had frequent postural and occasional environmental workplace limitations "like heights and driving in view of . . . [her] medical condition." *Id.*

On April 13, 2003, a non-examining state agency physician assessed Lynch's RFC.  R. 170-77.  The physician opined that Lynch is able to lift and carry twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for approximately six hours in an eight-hour workday, and push and pull without limitation.  R. 171.  The physician further opined that Lynch could climb ramps and stairs frequently, and climb ladders, ropes, and scaffolds occasionally.  R. 172.  Lynch could also balance, stoop, kneel, crouch, and crawl occasionally.  *Id.*  The physician also opined that Lynch had no manipulative, visual, communicative, or environmental limitations.  R. 173-75.

On August 19, 2003, another state agency physician completed a physical RFC assessment. R. 162-69.  According to the physician, Lynch is able to lift and carry twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for approximately six hours in an eight-hour workday; and push and pull without limitation.  R. 163.  Lynch could stoop and crouch only occasionally (due to her

-18-

back pain), R. 164, but otherwise had no postural, manipulative, visual, or environmental limitations. R. 164-66.

On August 26, 2003, Lynch visited Dr. Billy Thompson seeking a primary physician. R. 182. Lynch related a history of back injury since December 2001. *Id.* Dr. Thompson assessed chronic pain, hypertension, and chest problems. *Id.* The doctor recommended that Lynch see a chronic pain specialist, prescribed medication, and ordered laboratory tests. *Id.* Lynch's radiology consultation (of her chest, post-anterior and lateral) dated On October 9, 2003, revealed mainly normal results. R. 185. Her heart size was borderline enlarged without acute infiltrate. *Id.*

Lynch returned to Dr. Thompson on October 17, 2003, and complained of chronic back pain. R. 184. Dr. Thompson again recommended a chronic pain specialist. *Id.* Lynch saw Dr. Thomson again on November 14, 2003 for follow-up appointment. R. 183. Lynch also complained of a rash on her lower leg. *Id.* Dr. Thompson, again, assessed hypertension and ringworm. *Id.* He recommended Norvasc medication for her hypertension. *Id.*

On December 18, 2003, Lynch was involved in a motor vehicle accident. R. 187-88. An ambulance took her to the emergency room at Florida Hospital. R. 187-89. Lynch complained of left elbow, neck, back, bilateral leg, and knee pain. R. 189. The attending physician diagnosed neck and lumbar strain and a contusion. R. 188. The physician noted that the severity of Lynch's pain was "mild" and on examination, stated that Lynch's motor ability and strength were "strong." R. 188-89. The doctor recommended Percocet for the pain, and discharged Lynch in a stable condition. R. 191-92.

Lynch sought treatment with Dr. James Shea at the Physical Medicine Pain Center, P.A.  R. 198.  On January 9, 2004, Dr. Shea performed an initial evaluation.  Lynch complained of neck, left elbow, mid back, low back, bilateral knee, and bilateral foot pain.  R. 198.  Lynch also complained of tingling in her right foot and of frequent urination with urgency.  *Id.*  Lynch further reported that activities such as prolonged sitting, standing, walking, bending at the waist and heavy lifting aggravate her pain.  *Id.*  Dr. Shea noted that Lynch "ambulates with a cane in her left hand for balance and support."  R. 197.  A physical examination revealed tenderness (both marked and moderate) on palpation in Lynch's neck areas.  R. 196.  Lynch had normal muscle bulk and tone in her upper extremities, and tested 4/5 for manual muscle testing of the upper extremities.  *Id.*  Her straight leg raise was negative to ninety degrees bilaterally in a sitting position.  *Id.*  She also had significant tenderness to palpation over the lumbar paraspinals.  *Id.*  Lynch showed limited cervical and lumbar range of motion.  *Id.*  Dr. Shea assessed cervical and lumbar strain.  R. 195.  He recommended Percocet for pain and a physical therapy plan (involving application of moist heat, ultrasound  and electrical stimulation, and stretching the cervical and lumbar regions three days per week for three weeks).  *Id.*  Lynch underwent physical therapy, as recommended by Dr. Shea, at the Physical Medicine Pain Center from January 14 to March 9, 2004.  R. 200 - 20.

On January 23, 2004, Lynch returned to Dr. Shea and told him that physical therapy had not decreased her pain.  R. 194.  Lynch asked Dr. Shea to prescribe a TENS unit and a less expensive pain medication.  *Id.*  Dr. Shea prescribed Lortab (a pain medication), and recommended that Lynch continue her current physical therapy program and return for a follow-up appointment in one month. *Id.* Lynch returned on February 24, 2004.  R. 193.  Lynch reported that she continued to have neck

pain radiating down into her arms, and that her left arm, low back, and bilateral foot pain had increased.  *Id.*  Dr. Shea recommended that Lynch purchase a TENS unit, continue her current physical therapy plan, and return for another appointment in four weeks.  *Id.*

Dr. Shea saw Lynch on March 23, 2004.  Lynch continued to complain of pain, and that her physical therapy and Lortab medication were unhelpful.  R. 227.  The doctor recommended that discontinue physical therapy, purchase a TENs unit, and return for a follow-up visit.  *Id.*

At her follow-up appointment on April 20, 2004, Lynch reported experiencing increased pain "all over." R. 226.  She complained of headaches, neck, bilateral arm, and back pain radiating to her hips and down to her legs and feet.  *Id.*  Lynch also complained of numbness and tingling in her hands and feet, and of a "pulling type" feeling in her shoulders.  *Id.*

An MRI of Lynch's lumbar spine dated April 22, 2004 revealed mild multifactorial central canal stenosis L3-L4, and L4-L5, bulging annuli L2-L3 and L5-S1 without canal stenosis, facet arthropathy L2-L3 through L5-S1, foraminal narrowing L2-L3 through L5-S1 and a large T2 hyperintensity associated with the inferior aspect of the right kidney likely representing renal cyst.  R. 225.  On May 18, 2004, Lynch went to Dr. Shea for her follow up appointment.  *Id.*  After explaining the results of Lynch's April MRI, Dr. Shea noted that the T2 hyperintensity was "incompletely imaged" and recommended that Lynch consult her family physician about the possible renal cysts.  *Id.*  Dr. Shea also noted that his final evaluation report would be available at Lynch's next appointment.  *Id.*

On June 8, 2004, Dr. Shea completed a disability evaluation report.  R. 221-24.  Dr. Shea summarized Lynch's medical history and history of treatment at the Physical Medicine Pain Center.

R. 221.  Dr. Shea also included a physical examination.  R. 222-23.  He noted that Lynch had normal posture, and ambulated with a cane in her left hand for balance and support.  R. 222.  Lynch had normal muscle bulk and tone in her upper extremities.  *Id.*  Her straight leg raise tests were negative to ninety degrees bilaterally in a sitting position.  *Id.*  Dr. Shea opined that Lynch had a five percent cervical spine impairment rating and a five percent lumbosacral spine impairment rating.  R. 223.  Dr. Shea gave Lynch a ten percent "whole person impairment rating causally related to the 12/18/2003 accident."  R. 224 (citing the Guides to the Evaluation of Permanent Impairment, 5th Edition, AMA).  Dr. Shea further stated that Lynch had reached maximum medical improvement,  and that she would require ongoing medical care, including physician visits, pain medications, and periodic physical therapy during periods of exacerbation of her pain.  *Id.*

Lynch testified at the hearing before the ALJ on July 1, 2004.  R. 245-46.  Lynch testified that she had not seen Dr. Shea for six months.  R. 249.  Lynch complained of constant pain in her neck that feels like "pins and needles . . . sticking in [her] neck."  R. 249.  Lynch also complained of mid and low back pain that radiated to her feet and shoulder pain.  R. 250.  Lynch testified that she had no other problems other than her back, neck, and shoulder pain.  R. 251.

Lynch also stated that she cannot sit for more than fifteen to twenty minutes; stand for more than fifteen minutes; and walk for more than five to ten minutes.  R. 252, 255.  Lynch also testified that she cannot perform any household chores because of her pain.  R. 252.  She is, however, able to dress herself, and drive a car.  *Id.*  She does the stretching exercises prescribed by Dr. Shea each day for ten minutes.  *Id.*  Lynch also testified that she spends approximately seven hours of each day lying down, watching television, and reading the Bible.  R. 252-53, 258.  When she goes to the grocery

store, she brings another person to lift heavy groceries, and has to ride a cart to do her shopping.  R.

256.  Lynch further testified that she only sleeps approximately three and a half to four hours each

night, and that her TENS unit and Lortab medication do not alleviate her pain.  R. 257.

### B.   THE ANALYSIS

Lynch first argues that the ALJ erred by relying exclusively on the grids.  Docket No. 17 at 4.

According to Lynch, her postural limitations, pain, and use of a cane are severe non-exertional

limitations which preclude exclusive reliance on the grids.  *Id.* at 5.  Lynch contends that the

Commissioner therefore failed to meet her burden to establish that Lynch could perform other work

that exists in the national economy.  *Id.* at 4-5.  The Commissioner counters that the ALJ correctly

concluded that Lynch could perform substantially all of the full range of sedentary work, and that

Lynch's non-exertional limitations did not significantly affect her ability to do work.  Docket No. 18-1

at 7-8.  Therefore, the Commissioner argues, the ALJ did not err by exclusively relying on the grids

to conclude that Lynch was not disabled.  *Id.*

Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an

exertional impairment, without significant non-exertional factors.  Conversely, exclusive reliance is

not appropriate when a claimant is unable to perform a full range of work at a given residual

functional level, or when a claimant has a non-exertional impairment that significantly limits basic

work skills.  After a thorough review of the medical and other evidence, the ALJ correctly concluded

that Lynch could perform substantially all of the requirements of sedentary work.[3]  Substantial

evidence supports this determination.

---

[3] A claimant is able to perform the full range of work if they can perform "[a]ll or substantially all occupations existing at an exertional level."  Social Security Ruling 83-10.

-23-

All of Lynch's treating physicians prescribed conservative treatment, even after Lynch's motor vehicle accident in December 2003, which allegedly exacerbated Lynch's pain. Dr. Shea appears to be the only treating physician who treated Lynch after the accident. Dr. Shea saw Lynch approximately seven times over the course of six months in 2004. R. 193-98, 221-27. Lynch reported similar complaints of disabling pain during each visit. *See id.* Dr. Shea, however, continued to prescribe only pain medication, conservative physical therapy (involving application of heat, electrical stimulation, and stretching), and use of a TENs unit (after Lynch requested one). In addition, in his final evaluation dated June 8, 2004, Dr. Shea stated that Lynch had reached maximum medical improvement, and gave her a ten percent whole person impairment rating. R. 223.

Lynch's non-exertional impairments of postural limitations, pain, and use of a cane did not preclude exclusive use of the grids.[4] The grids may not be used "*when the claimant's non-exertional impairments are severe enough to preclude a wide range of employment at the level indicated by the exertional impairments.*" *Walker*, 826 F.2d at 1003 (emphasis in original; citations omitted). Lynch argues that her postural limitations (as shown by the ALJ's finding that Lynch could *occasionally* climb, balance, stoop, kneel, crouch, or crawl) are non-exertional impairments that preclude exclusive use of the grids. These postural limitations, however, are not usually required in sedentary work. *See* SSR 96-9p; 20 C.F.R. § 404.1567(a).[5]

---

[4]  Non-exertional Impairment is any impairment that does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. SSR 83-10. Non-exertional impairments thus include postural and manipulative limitations. 20 C.F.R. § 416.945(d). Required use of an assistive device to ambulate can be considered a manipulative limitation. *See Walker*, 826 F.2d at 1001.

[5]Sedentary work involves:

lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain

Further, the record does not support Lynch's contention that Lynch had severe non-exertional impairments. ALJ found that Lynch's testimony about her impairments was "somewhat exaggerated and disproportionate to the diagnostic and clinical findings," and correctly noted that "[c]onsidering the definitive laboratory and clinical findings, [Lynch's] subjective complaints are beyond what would reasonably be expected in terms of intensity, duration, or frequency." Again, as stated earlier, Dr. Shea, as well as physicians who treated her before her 2003 accident, treated Lynch very conservatively. An x-ray of her right shoulder and MRIs of the cervical and lumbar spine revealed mild or moderate degenerative changes. *See* R. 148-49, R. 159, 225. In addition, no doctor ever recommended or prescribed the use of a cane. At most, Dr. Shea observed that Lynch used a cane to assist her in walking. *See* R. 197, 222. Nothing in the record supports Lynch's allegations of severe non-exertional impairments that would preclude exclusive use of the grids. The Commissioner has met her burden.

Lynch also argues that the ALJ did not properly evaluate Lynch's complaints of pain. Docket No. 17 at 7-10. Lynch contends that objective medical evidence confirms the severity of her pain, and that the ALJ incorrectly applied the Eleventh Circuit's pain standard. As discussed earlier, the record

---

amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Social Security Ruling 96-9p states, in relevant part:

Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.

The SSR further provides that "[a]n ability to stoop occasionally . . . is required in most unskilled sedentary occupations[,] . . . [and] [c]onsultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." SSR 96-9p.

does not support Lynch's allegations of disabling pain.  Substantial evidence supports the ALJ's

determinations, and remand is unnecessary.

### VI.   **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**.  The Clerk

should enter a judgment and close the case.

**DONE AND ORDERED** this 14th day of August, 2006.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL              33602

The Honorable Albert D. Tutera
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL             32817